UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TIMOTHY BROCKERMAN,<br><br>Defendant. | Case No. 25-mj-72 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION OF
DEFENDANT TIMOTHY BROCKERMAN**

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum in support of its motion that Defendant Timothy Brockerman be detained pending trial pursuant to Title 18, United States Code, Section 3142(f)(1)(A) (crime of violence). On April 29, 2025, the defendant traveled from Virginia to the District of Columbia intending to sexually abuse a six-year-old girl. The defendant was arrested and has been charged by criminal complaint with violating Title 18, United States Code, Section 2423(b) (travel with intent to engage in illicit sexual conduct). The government respectfully requests that this Court consider the following points and authorities, as well as any information presented at the detention hearing, and order the defendant detained pending trial.

**Factual Background**

Leading up to April 21, 2025, an FBI Washington Field Office TFO was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in

Washington, D.C. The UC entered a public KIK[1] group that was known to the UC as a place where people meet to discuss and trade original images and videos of children.

Upon entering the group, the UC introduced himself and stated that he was a "dad." A member of the group using the KIK display name "Dr.BrockJr" -- who was later identified as the defendant -- initiated a private chat with the UC. During the private chat, the defendant stated, "I am not a dad. how old is your daughter?" The UC told the defendant that his purported daughter was 6 years old. The defendant told the UC that he had a sexual interest in incest, young, and beast.[2]

During the private chat with the UC, the defendant discussed the UC's purported daughter stating, "I would eat ur lil pussy make it good and wet then slid my cock in, opening ur up slow." The UC told the defendant that he resides in Washington, D.C. and that he has shared custody of his purported daughter. The defendant stated that lives close to Herndon, Virginia. The UC observed that the defendant's Kik profile image depicted a white male wearing glasses next to a white and black cat.

During the chat, the UC asked the defendant, "what's the youngest u played with?" and the defendant responded that, when he was a minor, he previously sexually abused a family member. The defendant also stated, "when I was 7 I fucked a neighbor boy in the ass, I think he was my age."

The UC sent the defendant an image of his purported daughter.[3] The defendant told the UC that he was interested in meeting the UC at his home for purposes of engaging in sexual activity

---

[1] KIK is a free instant messaging mobile application that allows users to communicate in a group or private chat. Users can send and receive video and image files.
[2] Your Affiant understands that "beast" is short for "bestiality," which means having a sexual interest in animals.
[3] The image sent by the UC did not depict a real child or sexual abuse material.

with the UC's purported daughter. Referring to the purported child, the defendant stated, "I would fuck her with a rubber," and "damn I really want to unload deep as I can inside her." Later in the chat, the defendant stated, "no I mean the first time I come over I use a rubber, second time I creampie her lil pussy." The defendant then discussed with the UC his plan to travel to the District of Columbia. During the conversation, the defendant inquired about parking and told the UC that he would be driving a Ford Ranger truck.

The defendant provided the UC with his mobile phone number and began texting the defendant on his mobile phone at cellular number 571-316-XXXX. During the text conversation, the defendant confirmed that he planned to travel from Virginia to the District of Columbia at approximately 11:00 a.m. on Tuesday, April 29, 2025, in order to have sexual intercourse with the UC's purported 6-year-old daughter. The defendant stated, "If I can be there earlier I will let uk… Like to have as much time as possible so she can ride my cock as long as she wants."

During the text conversation with the UC, the defendant sent the UC two photos depicting his chest and stomach, which revealed a protruding hernia. The defendant stated to the UC, "I got a hernia, looks gross to me but it don't hurt so she don't have to worry."

On April 29, 2025, the defendant traveled from his home in Virginia and met the UC at a pre-arranged location in the 500 block of H Street, N.W., in Washington, D.C., where he was placed under arrest. Following his arrest, the defendant waived his *Miranda* rights and agreed to a voluntary custodial interview. During the interview, the defendant admitted that he traveled to the District of Columbia with the intent to engage in vaginal sexual intercourse with the 6-year-old daughter of a man he had met on a social media application. The defendant further admitted that he had previously had sexual intercourse with minors on at least two occasions.

**Identification of the Defendant**

Before his April 29, 2025, arrest, CEHTTF had already identified the suspect communicating with the UC as the defendant, Timothy Brockerman. On April 25, 2025, a CEHTTF member served an administrative subpoena on T-Mobile for the phone number that the defendant was using to communicate with the UC (571-316-XXXX). T-Mobile provided the name "Timothy Brockerman" as the registered user of the account. CEHTTF members compared the driver's license photo of Timothy Brockerman with the profile photo visible on the "Dr.BrockJr" Kik account that was used to communicate with the UC and observed that the two photos appeared to depict the same individual. In addition, a search of law enforcement databases revealed that Timothy Brockerman was residing at XXXXX Legacy Circle, Herndon, Virginia.

## Procedural History

On Tuesday April 29, 2025, the defendant was arrested upon probable cause in the District of Columba after driving to the District from Virginia and meeting the UC at a pre-arranged location. The same day, in accordance with Federal Rule of Criminal Procedure 5(b), the government submitted an application for a criminal complaint and arrest warrant, which this court issued on April 30, 2025. The defendant made his initial appearance before this court on April 30, 2025. On the government's motion, the defendant was held pending a detention hearing, which is scheduled for Monday, May 5, 2025. The government now respectfully submits this memorandum in support of its motion for pretrial detention.

## Applicable Legal Standard

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546,

550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

Here, Congress has specified that for an offense involving a minor victim under Section 2423, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"). But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered

among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp.34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## Argument

For reasons that follow, the defendant poses an unmitigable risk to community safety. Because there are no conditions of release adequate to reasonably assure community safety, this Court should order the defendant detained pending trial.

### A. Nature and Circumstances of the Charged Offense

The nature and circumstances of the charged offense weigh heavily in favor of detention. Here, the defendant admitted that he traveled into the District with the intent of having sexual

intercourse with a six-year old little girl. The defendant described his intentions and his sexual interest in the officer's purported 6-year-old daughter in disturbing detail. These facts strongly support the presumption of dangerousness. The facts in this case are similar to those in *United States v. Breeden*, where District Court Judge Amy Berman Jackson detained the defendant noting that "this defendant did not simply express an interest in a sexual encounter with a minor, and he did not simply make arrangements for a sexual encounter with a minor, but he took the affirmative, unequivocal step of driving his vehicle into the District of Columbia to arrive at the appointed time and place." *United States v. Breeden*, No. 15-MJ-0506 (AK-ABJ), 2015 WL 13310427, at *7 (D.D.C. Nov. 16, 2015). Moreover, the extreme dangerousness of this offenses is demonstrated by the fact that "but for the fact that defendant was communicating with an undercover officer, defendant could have come fact-to face with a minor and a willing parent" *Breeden*, 2015 WL 13310427, at *8.

Indeed, the charged offense both **(i)** is the basis for the statutory presumption of dangerousness and **(ii)** involves a minor victim, which are two factors this Court is required to consider in assessing the nature and circumstances of the offense. *See* 18 U.S.C.§ 3142(G)(1) ("The judicial officer shall . . . take into account the available information concerning— the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim . . . ."). *See Breeden*, 2015 WL 13310427, at *7 ("Congress specifically directed courts to consider whether a defendant is charged with a 'crime of violence' when assessing the nature and circumstances of the offense factor, and it designated a violation of section 2423(b) to be a crime of violence."); *accord United States v. Johnston*, No. 17-MJ-0046 (BAH), 2017 WL 4326390, at *4 (D.D.C. Sept. 28, 2017) (noting that a

violation of Section 2423(b) "is a serious crime" subject to a rebuttable presumption of detention); *United States v. Beauchamp-Perez*, 822 F. Supp. 2d 7, 10 (D.D.C. 2011) ("With respect to the nature and circumstances of the offense, the charged offense is serious and involved traveling with intent to have sex with a twelve year-old minor victim. The Court finds that this factor supports detaining the defendant; indeed, it is the basis for the presumption in favor of detention.")

The seriousness of the offense is also reflected by Congress's judgment that those convicted of the charged offense face up to 30 years' imprisonment upon conviction. *See* 18 U.S.C. § 2423(b); *Johnston*, 2017 WL 4326390, at *4 (considering, as factors weighing in favor of detention, that a conviction "allows for imprisonment up to 30 years" and that "the defendant may face substantial prison time"). Indeed, the United States Sentencing Guidelines also reflect the serious nature of the offense with which the defendant has been charged. Based on the conduct known to the government at this early stage of the case, the government estimates the defendant's total Offense Level under the Guidelines to be 38, yielding an estimated Guidelines range of 235- to 293 months' imprisonment (i.e., approximately 19.58 to 24.41 years' imprisonment), which further reflects the very serious nature of the offense conduct. *See* USSG §2G1.3(a)(3) (base offense level of 28); USSG §2G1.3(b)(3) (2-level enhancement for use of a computer); USSG §2G1.3(b)(5) (eight-level enhancement for minor victim under 12).

Accordingly, the nature and circumstances of the charged offense weigh heavily in favor of detention.

      B.    <u>**The Weight of the Evidence Against the Defendant**</u>

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention. The evidence against the defendant in this case is extremely strong. As detailed

above, the defendant engaged in extensive, detailed conversations with an undercover officer about his sexual interest in children and, made specific plans to sexually abuse the agent's purported six-year-old daughter. Shortly before traveling into Washington, D.C., the defendant re-iterated his intent toward the purported child and stated that he wanted to "fuck her with a rubber," and later clarified, "no I mean the first time I come over I use a rubber, second time I creampie her lil pussy." After describing his plan in disturbing detail, the defendant then acted to carry out his plan by driving in to the District and meeting the undercover officer at a pre-determined location.

In addition, after his arrest, the defendant admitted to meeting the undercover agent online, talking to him on a messaging application, and driving from Virginia to meet him at a pre-determined location in the District of Columbia.

While some judges in this Court have indicated that this factor should be given less weight, in *United States Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, J.). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the weight of the evidence favors detention.

### C. The History and Characteristics of the Defendant

The defendant has admitted to having a sexual interest in children and he has described his intention to sexually assault the undercover officer's purported six-year-old daughter in disturbing detail. In addition, the defendant admitted to having sexually abused children in the past, including an eight-year-old family member and a neighbor boy. Although the defendant claims that this conduct occurred when he was a teenager, the behavior is deeply concerning and is further evidence that the defendant poses a serious risk to children in the community.

Although the defendant appears to have minimal criminal history, the absence of prior criminal convictions is not sufficient to rebut the statutory presumption of dangerousness on the facts of this case. *See, e.g. Breeden*, 2015 WL 13310427, at *7 ("But the inferences the defendant is asking the Court to draw do not go far enough. The Court is not certain that a lack of *more* incriminating evidence constitutes 'evidence' that rebuts the presumption arising from the undisputed facts of the case." (emphasis in original)); *Pope v. United States*, 739 A.2d 819, 826 (D.C. 1999) (explaining that, under the D.C. Code's rebuttable presumption, if a court makes the requisite finding that a defendant committed certain crimes, then the "defendant is presumed to be dangerous (and subject to preventive detention) even if his prior record is clean and if no other showing of dangerousness is made").

Accordingly, this factor also weighs in favor of detention.

D.  **The Nature and Seriousness of the Danger to any Person or the Community**

The evidence in this case establishes that the defendant poses a grave danger to the community. As discussed above, the defendant admits to sexually abusing children in the past and is charged with traveling across state lines into the District of Columbia to sexually abuse a purported six-year-old girl. In addition, "the fact that the defendant poses a danger is presumed and is to be factored into the statutory analysis, even if some contrary evidence has been adduced." *Breeden*, 2015 WL 13310427, at *9 (citing *Stone*, 608 F.3d at 945–46).

It is the Government's understanding that, before his arrest, the defendant was unemployed and living with a roommate who had expressed a desire for the defendant to move out of his apartment. Based on available information, the government does not believe that the defendant will be able to rebut the statutory presumption of dangerousness or propose a release plan that will adequately assure the safety of the community.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court detain the defendant pending trial.

Respectfully submitted,

EDWARD R. MARTIN, Jr.
United States Attorney
D.C. Bar No. 481866

Dated: May 2, 2025      By:      /s/ *Karen L. Shinskie*
Karen L. Shinskie
D.C. Bar No. 1023004
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 730-6878
Karen.Shinskie@usdoj.gov